**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY | ) | |
| INFORMATION CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-121 (RCL) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ....................................................................................................................... 6

I.  THE FBI PROPERLY WITHHELD IN FULL ALL RECORDS RESPONSIVE
    TO ITEMS 1 THROUGH 3 OF PLAINTIFF'S REQUEST UNDER
    EXEMPTION 7(A)............................................................................................................. 6

    A.  The FBI Conducted An Adequate Search for Records Responsive to Items 1
        through 3 of Plaintiff's Request ............................................................................ 7

    B.  Exemption 7(A) Protects The Release of Records Or Information That
        Would Interfere With Ongoing Law-Enforcement Investigations ...................... 10

    C.  The FBI Has Released As Much Information As Possible About The
        Responsive Documents In The Relevant Investigative Files................................ 13

    D.  No Reasonably Segregated Non-Exempt Information Exists............................... 19

II. THE FBI CONDUCTED AN ADEQUATE SEARCH FOR RECORDS
    RESPONSIVE TO ITEM 4 OF PLAINTIFF'S REQUESTS AND PROPERLY
    REDACTED EXEMPT PORTIONS OF RESPONSIVE RECORDS .............................21

    A.  The FBI Conducted An Adequate Search for Records Responsive to
        Items 4 of Plaintiff's Request .............................................................................. 22

    B.  The FBI Properly Redacted Certain Portions of Responsive Records Under
        Exemption 1 ......................................................................................................... 24

    C.  The FBI Properly Redacted Certain Portions Of Records Under
        Exemption 3 ......................................................................................................... 29

    D.  The FBI Released All Reasonably Segregable Portions of Responsive
        Records ................................................................................................................. 30

CONCLUSION.................................................................................................................... 32

i

# TABLE OF AUTHORITIES

## CASES

*Abdeljabbar v. Bureau of Alcohol, Tobacco, and Firearms,*
    74 F. Supp. 3d 158 (D.D.C. 2014) ........................................................................... 28

*ACLU v. CIA,*
    892 F. Supp. 2d 234 (D.D.C. 2012) .................................................................. 27, 29

*ACLU v. DOJ,*
    681 F.3d 61 (2d Cir. 2012) ..................................................................................... 27

*ACLU v. DoD,*
    628 F.3d 612 (D.C. Cir. 2011) ................................................................................ 25

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,*
    830 F.3d 667 (D.C. Cir. 2016) ................................................................................ 26

*Bevis v. Dep't of State,*
    801 F.2d 1386 (D.C. Cir. 1986) ......................................................................... 12, 13

*Bigwood v. DoD,*
    132 F. Supp. 3d 124 (D.D.C. 2015) ..................................................................... 9-10

*Boyd v. Criminal Div. of DOJ,*
    475 F.3d 381 (D.C. Cir. 2007) ........................................................................... 17, 21

*Brayton v. Office of the U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) .................................................................................. 4

*Campbell v. HHS,*
    682 F.2d 256 (D.C. Cir. 1982) ................................................................................ 12

*Campbell v. DOJ,*
    164 F.3d 20 (D.C. Cir. 1998) .................................................................................. 22

*Church of Scientology of Calif. v. IRS,*
    792 F.2d 153 (D.C. Cir. 1986) ................................................................................ 31

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*
    746 F.3d 1082 (D.C. Cir. 2014) ......................................................................... 10, 12

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
    789 F.2d 64 (D.C. Cir. 1986) ............................................................................. 13, 14

*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ........................................................................ 27, 28

*Cucci v. DEA*,
  871 F. Supp. 508 (D.D.C. 1994) ........................................................... 16, 18, 19, 21

*Dean v. DOJ*,
  87 F. Supp. 3d 318 (D.D.C. 2015) ........................................................................ 4

*Dillon v. DOJ*,
  102 F. Supp. 3d 272 (D.D.C. 2015) ..................................................................... 20

*Edmonds v. FBI*,
  272 F. Supp. 2d 35 (D.D.C. 2003) .................................................................. 14, 16

*Edmonds v. DOJ*,
  405 F. Supp. 2d 23 (D.D.C 2005) ........................................................................ 29

*EPIC v. DOJ*,
  82 F. Supp. 3d 307 (D.D.C 2015) ........................................................................ 21

*EPIC v. ODNI*,
  982 F. Supp. 2d 21 (D.D.C. 2013) ....................................................................... 30

*FBI v. Abramson*,
  456 U.S. 615 (1982) ............................................................................................. 5

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) ............................................................................. 30

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) .......................................................................... 28

*Goland v. CIA*,
  607 F.2d 339 (D.C. Cir. 1978) ............................................................................ 30

*Hall v. CIA*,
  881 F. Supp. 2d 38 (D.D.C. 2012) ....................................................................... 22

*Halperin v. CIA*,
  629 F.2d 144 (D.C. Cir. 1980) ............................................................................ 25

*Jarvik v. CIA*,
  741 F. Supp. 2d 106 (D.D.C. 2010) ..................................................................... 29

iii

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ............................................................................ 5

*Johnson v. Exec. Office for U.S. Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002) ..................................................... 7, 32

*Juarez v. DOJ*,
   518 F.3d 54 (D.C. Cir. 2008) ..................................................... 10, 31

*Judicial Watch v. DHS*,
   59 F. Supp. 3d 184 (D.D.C. 2014) .................................................. 12

*Judicial Watch, Inc. v. DoD*,
   715 F.3d 937 (D.C. Cir. 2013) ....................................................... 26

*LaCedra v. Exec. Office for U.S. Attorneys*,
   317 F.3d 345 (D.C. Cir. 2003) ......................................................... 8

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ............................................. 5, 25, 27

*Light v. DOJ*,
   968 F. Supp. 2d 11 (D.D.C. 2013) ................................................... 5

*Manning v. DOJ*,
   234 F. Supp. 3d 26 (D.D.C. 2017) ................................. 12, 17, 19, 20

*Mapother v. DOJ*,
   3 F.3d 1533 (D.C. Cir. 1993) ......................................................... 10

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ....................................................... 22

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ....................................................... 24

*Miller v. Casey*,
   730 F.2d 773 (D.C. Cir. 1984) ....................................................... 25

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) ............................................... 26, 29

*Nation Magazine, Washington Bureau  v. U.S. Custom's Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) ........................................................... 8

*Neufield v. IRS*,
   646 F.2d 661 (D.C. Cir. 1981) ................................................................. 31

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ................................................................. 10, 12, 13

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ................................................................. 7

*Owens v. DOJ*,
   No. 04-1701 (JDB), 2007 WL 778980 (D.D.C. Mar. 9, 2007) ......................................... *passim*

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) ................................................................. 22

*Robbins, Geller, Rudman & Dowd, LLP v. SEC*,
   No. 3:14-CV-2197, 2016 WL 950995 (M.D. Tenn. Mar. 12, 2016) ..................................... 20

*Schrecker v. DOJ*,
   349 F.3d 657 (D.C. Cir. 2003) ................................................................. 7

*Shapiro v. DOJ*,
   37 F. Supp. 3d 7 (D.D.C. 2014) ................................................................. 27

*Steinberg v. DOJ*,
   23 F.3d 548 (D.C. Cir. 1994) ................................................................. 7, 22, 24

*Students Against Genocide v. Dep't of State*,
   257 F.3d 828 (D.C. Cir. 2001) ................................................................. 30

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 21, 32

*Weissman v. CIA*,
   565 F.2d 692 (D.C. Cir. 1977) ................................................................. 27

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................................. 5

**STATUTES**

5 U.S.C. § 552 ................................................................. *passim*

50 U.S.C. § 3024(i)(1) ................................................................. 30

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

28 C.F.R. § 600.4(a) ................................................................................................................ 4

75 Fed. Reg. 707 (Dec. 29, 2009) .......................................................................................... 25

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

Executive Order 13526 ...................................................................................................... 25, 26

## INTRODUCTION

This action arises from a Freedom of Information Act ("FOIA") request sent by the Electronic Privacy Information Center ("Plaintiff") to the Federal Bureau of Investigation ("FBI"). The request had four parts. The first three items sought records relating to the FBI's investigation into Russian interference in the 2016 Presidential Election; the fourth item sought records relating to the FBI's procedures for notifying targets of cyber attacks.

On May 11, 2017, the FBI produced records responsive to item 4 of Plaintiff's request, withholding a small amount of material under FOIA Exemptions 1, 3, and/or 7(E). Plaintiff takes no issue with the FBI's redactions pursuant to Exemption 7(E), and challenges only certain redactions under Exemptions 1 and 3, as well as the adequacy of the FBI's search and whether the FBI released reasonably segregable, non-exempt portions of responsive records. The FBI's search was reasonably calculated to locate responsive records, its redactions are justified under FOIA, and those redactions were narrowly crafted in order to release as much information as possible without causing harm that is protected under Exemptions 1 and 3 – that is, without compromising national security information that is either classified or protected by statute.

Items 1 through 3 of Plaintiff's request relate directly to the FBI's investigation into Russian interference in the 2016 Presidential Election. On March 20, 2017, then-FBI Director James B. Comey confirmed publicly, for the first time, that the FBI was conducting a counterintelligence investigation into the Russian government's efforts to interfere in the 2016 Presidential Election, including "investigating the nature of any links between individuals associated with the" campaign of President Donald Trump and the Russian government "and whether there was any coordination between the campaign and Russia's efforts." Former Director Comey further confirmed that the investigation would "include an assessment of whether any

crimes were committed" (the "Russia investigation").  That investigation remains ongoing, now under the purview of Special Counsel Robert Mueller.  Accordingly, the FBI has withheld in full all records responsive to items 1 through 3 of Plaintiff's request under FOIA Exemption 7(A).  The FBI has properly supported its Exemption 7(A) assertion by submitting a sworn declaration providing a detailed breakdown of the categories of records in the relevant investigative files that contain all records responsive to items 1 through 3 of Plaintiff's request, and a description of the ways in which disclosure of each category of records could reasonably be expected to interfere with the Russia investigation.

Because the FBI properly withheld the records and information that Plaintiff seeks under FOIA, the FBI's motion for summary judgment should be granted.

## BACKGROUND

On December 22, 2016, Plaintiff submitted a FOIA request to the FBI seeking four categories of records:

(1) All records including, but not limited to, memos, reports, guidelines, procedures, summaries, and emails pertaining to the FBI's investigation of Russian-sponsored cyber attack on the RNC, DNC, and DCCC;

(2) All records of communications to the RNC, DNC, and DCCC regarding the threat of Russian interference in the 2016 Presidential election;

(3) All records of communications with other federal agencies regarding Russian interference in the 2016 Presidential election;

(4) All records including, but not limited to, memos, reports, guidelines, and procedures pertaining to the FBI's procedure to notify targets of cyber attacks.

Declaration of David M. Hardy ("Hardy Decl.") ¶ 4 & Ex. A.

Plaintiff filed this lawsuit on January 18, 2017, claiming that the FBI had violated FOIA by unlawfully withholding records and by failing to grant Plaintiff's request for expedited processing.  *See* Compl. for Injunctive Relief ("Compl."), ECF No. 1.  The FBI originally

anticipated that it would assert a *Glomar* response to items 1 through 3 of Plaintiff's request, neither confirming nor denying the existence of any responsive records.  Hardy Decl. ¶ 8.  On March 20, 2017, however, former FBI Director Comey testified before Congress and publicly acknowledged, for the first time, that the FBI was investigating "the Russian government's efforts to interfere in the 2016 presidential election," including "the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts."  Hardy Decl. ¶ 12 (quoting Statement Before the House Permanent Select Committee on Intelligence (Mar. 20, 2017) https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation). Thereafter, the FBI began searching for and reviewing records responsive to items 1 through 3 of Plaintiff's request.  *Id*. ¶ 16. That search and review, which relied on subject-matter experts who were already familiar with the relevant records due to their sensitive and high-profile nature, *id*. ¶ 17, ultimately confirmed that all records responsive to items 1 through 3 of Plaintiff's request are part of the FBI's active, ongoing Russia investigation.  *Id*. ¶ 18.  Accordingly, the FBI withheld in full all records responsive to items 1 through 3 of Plaintiff's request pursuant to Exemption 7(A). *See id*. ¶ 10 & Exs. C, D.  With respect to item 4 of Plaintiff's request, the FBI conducted a search, located and processed 106 pages of responsive records, Hardy Decl. ¶ 48, and made a complete production on May 11, 2017, *id*. ¶ 10 & Ex. B.  Of these records, the FBI released 89 pages in full and made partial redactions on 17 pages under Exemptions 1, 3, and/or 7(E).  Hardy Decl. ¶¶ 49-50.

On May 17, 2017, Robert Mueller was appointed as Special Counsel to oversee the Russia investigation.  *Id*. ¶ 13; *see also* Department of Justice Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and

Related Matters (May 17, 2017).[1]  Per the terms of the appointing  order and the relevant DOJ regulations, Special Counsel Mueller is authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)."  *Id.*  In addition, "[i]f the Special Counsel believes it necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters."  *Id*.

Other than former Director Comey's March 20, 2017 congressional testimony, the order appointing Special Counsel Mueller, and this and related court filings,[2] there have been no official disclosures or public statements by the FBI or the Department of Justice about any details of the Russia investigation, including its subjects, its scope, or its focus.  *See* Hardy Decl. ¶ 14.  As of the date of this filing, the Russia investigation is ongoing.  *Id*.

Plaintiff has informed counsel for Defendant that it intends to challenge the FBI's assertion of Exemptions 1, 3, and 7(A); whether the FBI released reasonably segregable, non-exemption portions of responsive records; and the adequacy of the FBI's search.  *See* ECF No. 18.

## LEGAL STANDARD

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Dean v. DOJ*, 87 F. Supp. 3d 318, 320 (D.D.C. 2015) (citation omitted); *accord Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of

---

[1] https://www.justice.gov/opa/press-release/file/967231/download
[2] *See* Defs.' Mot. for Summ. J., *Leopold v. Dep't of Treasury*, Civil Action No. 16-cv-1827 (KBJ) (D.D.C. July 26, 2017), ECF No. 18.

FOIA cases can be resolved on summary judgment.").  A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B).  Generally, "[t]he defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) (citation omitted).

FOIA represents a delicate balance "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted).  In drafting the statute, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information," and therefore "provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although these exemptions are to be "narrowly construed," *id.* at 630 (citation omitted), courts must still give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit . . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted).  This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75 (citation omitted).

## ARGUMENT

With respect to items 1 through 3 of its request, Plaintiff has received an explanation as to why the FBI cannot release any responsive records without doing harm that is protected by Exemption 7(A). And with respect to the fourth item of its request, Plaintiff has received over a hundred pages of records from the FBI – the vast majority of which were released in full – and an explanation justifying each redaction it now challenges. The FBI's response has now been justified in a reasonably specific affidavit entitled to a presumption of good faith. The FBI is therefore entitled to summary judgment.

## I.      THE FBI PROPERLY WITHHELD IN FULL ALL RECORDS RESPONSIVE TO ITEMS 1 THROUGH 3 OF PLAINTIFF'S REQUEST UNDER EXEMPTION 7(A)

As noted above, former FBI Director Comey confirmed the existence of an FBI investigation into Russian interference with the 2016 Presidential Election at a congressional hearing on March 20, 2017. The judgment that disclosure of the existence of this investigation was in the public interest, however, does not undermine the extremely sensitive nature of the ongoing Russian investigation, and the critical law-enforcement need to protect any further details regarding its targets, its scope, the works that has been done to date, and the work that remains to be done.

On the basis of that ongoing investigation, the FBI invokes Exemption 7(A), on a categorical basis, to withhold in full all records responsive to items 1 through 3 of Plaintiff's request, all of which are part of the FBI's investigation now being overseen by Special Counsel Mueller.[3]  To justify that response, the FBI has, consistent with a procedure that has been

---

[3] On Friday, October 6, 2017, the FBI filed an unopposed motion to clarify the Court's Scheduling Order.  *See* ECF No. 20.  That motion remains pending at this time.  Pursuant to the terms of that motion, the FBI is at this time relying exclusively on Exemption 7(A) to justify its withholding of records responsive to items 1 through 3 of the request, and preserves the right to invoke other exemptions for these records at a later date, if necessary.

repeatedly blessed by the D.C. Circuit, conducted an adequate search, reviewed the relevant records, assigned them to certain high-level functional categories, and explained exactly how the release of documents from each of those categories would undermine the ongoing Russia investigation.  Any further information about these records or about that investigation is exempt under Exemption 7(A), and thus remains properly withheld under FOIA.

### A.   The FBI Conducted An Adequate Search for Records Responsive to Items 1 through 3 of Plaintiff's Request

To obtain summary judgment in a FOIA case with respect to the adequacy of the agency's search, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents."  *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted).  "There is no requirement that an agency search every record system;" rather, the agency must only conduct a good-faith, reasonable search of those systems or records likely to possess the requested information.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Searching for records responsive to a FOIA request is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro manage the executive branch."  *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (*quoting Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

As an initial matter, the FBI did not interpret Plaintiff's references, in items 1 and 2 of its request, to Russian-sponsored cyber attacks on the DNC, RNC, and DCCC as limiting Plaintiff's request for records relating to the FBI's investigation into Russian interference in the election.  *See* Hardy Decl. ¶ 17 & n.4.  The request itself states at the outset that Plaintiff "seeks records pertaining to the FBI's investigation of Russian interference in the 2016 U.S. Presidential election."  Ex. A to Hardy Decl. at 1.  The request then proceeds to provide background

information under the heading "The Russian Attack on the 2016 U.S. Presidential Election," *id.*,

seek a fee waiver because the requested records "speak directly to the nature of the FBI's response

to the allegations of Russian interference with the 2016 Presidential election," *id.* at 7, and

specifically request records of the FBI's communications with other federal agencies "regarding

Russian interference in the 2016 Presidential election," *id.* at 6 (item 3).  Plaintiff's Complaint

confirms the broad scope of its FOIA request, alleging that Plaintiff submitted the request "for

information about the [FBI's] response to the Russian interference with the 2016 Presidential

election."  Compl. ¶ 10; *see also* Compl. at 2 (using the heading "FBI records of Russian

interference with the 2016 Presidential Election" to describe the background for Plaintiff's FOIA

request).

Given the context in which the request was made,[4] and the FBI's duty to construe FOIA

requests liberally, *see Nation Magazine, Washington Bureau v. U.S. Custom's Serv.*, 71 F.3d 885,

890 (D.C. Cir. 1995), the FBI reasonably concluded that items 1 through 3 of Plaintiff's request

seek records of the FBI's Russia investigation and not just those that specifically mention the DNC,

RNC, and DCCC.  *See also LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 347–48

(D.C. Cir. 2003) (where FOIA request broadly sought "all records" pertaining to the requester's

---

[4] Further context for the request is provided in an Intelligence Community report, published by the Office of the Director of National Intelligence, that Plaintiff cites as an impetus for its FOIA request.  *See* Compl. ¶ 7 & n.1.  That report concluded that the Russian government carried out a "multifaceted" interference in the 2016 U.S. Presidential Election, and that a primary component of that interference was a campaign of cyber espionage against political organizations in the United States, including the DNC, pursuant to which Russian-affiliated hackers infiltrated these organizations to collect information that they then released publicly.  *See* Office of the Dir. Of Nat'l Intelligence, *Assessing Russian Activities and Intentions in Recent US Elections* (2017) https://dni.gov/files/documents/ICA_2017_01.pdf.  This publicly-available report makes clear the interrelated nature of Russian interference with the 2016 election overall and Russian-sponsored cyber attacks on political organizations in the United States, and lends credence to the FBI's interpretation of Plaintiffs request as listing the cyber attacks on such institutions as illustrative examples of the larger Russian interference campaign.

case, and then enumerated specific types of documents, rejecting as unreasonable agency's interpretation that limited request to only the more specifically enumerated documents and noting that "[t]he drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof"). Accordingly, the FBI construed the universe of records responsive to items 1 through 3 of Plaintiff's request as being co-extensive with the content of the investigative files from the FBI's Russia investigation as they existed on March 20, 2017 (the cut-off date of the FBI's search, *see* Hardy Decl. ¶ 16 & n.3), and that is what the FBI searched for in response to this FOIA request. *Id.* ¶¶ 17-18.

As explained in the Hardy Declaration, the FBI typically would search the Central Records System ("CRS") in response to a FOIA request. Hardy Decl. ¶ 17. That was not necessary here, however, because of the sensitive and high-profile nature of the records in question. Instead, "counsel in the National Security and Cyber Law Branch ("NSCLB") of the FBI's Office of the General Counsel ("OGC") – subject-matter experts who were already familiar with the relevant records – were consulted to identify and locate any and all records responsive to items 1-3 of Plaintiff's FOIA request." *Id.* "Through NSCLB counsel who were assigned to provide such support, the pending Russian interference investigation files were identified as those containing the records responsive to items 1-3, based on NSCLB counsel's pre-existing familiarity with the investigation and records compiled during it." *Id.* "That manual search and review of the entirety of the relevant investigative files as they existed as of March 20, 2017, confirmed that all records responsive to Plaintiff's request are part of the Russian interference investigation, which is an active, ongoing investigation being conducted by the FBI." *Id.* ¶ 18. Reliance on such subject-matter experts, with actual knowledge of and familiarity with the relevant documents, satisfies the FBI's search obligations under FOIA. *See, e.g.*, *Bigwood v. U.S. DoD*, 132 F. Supp. 3d 124, 145

(D.D.C. 2015) (upholding the adequacy of a "manual search" by qualified agency personnel, relying on an affidavit that identified "who conducted the searches," "how they conducted the searches," "where they searched," and "what they searched for").  In sum, the FBI has searched all files that are likely to contain documents responsive to items 1 through 3 of Plaintiff's request, located any responsive records, and concluded "that no other locations or records repositories exist where responsive records would likely be maintained."  Hardy Decl. ¶ 19; the FBI's search was therefore adequate under FOIA.

### B.     Exemption 7(A) Protects The Release of Records Or Information That Would Interfere With Ongoing Law-Enforcement Investigations

Exemption 7(A) "exempts from disclosure 'records or information compiled for law enforcement purposes . . . to the extent that the production of [the] records or information . . . could reasonably be expected to interfere with enforcement proceedings." *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (hereinafter "*CREW*") (quoting 5 U.S.C. § 552(b)(7)(A)).   "Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'"  *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)).  "To justify withholding, [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'"  *Id.* (quoting *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).  "[A]n ongoing criminal investigation typically triggers Exemption 7(A): '[S]o long as [an] investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.'"  *CREW*, 746 F.3d at 1098 (quoting *Juarez v. DOJ*, 518 F.3d 54, 59 (D.C. Cir. 2008)).

As an initial matter, for obvious reasons – which presumably Plaintiff will not dispute – all of the records and information responsive to items 1 through 3 were compiled for law-enforcement purposes.  *See* Hardy Decl. ¶ 24 ("The FBI concluded that any records responsive to items 1-3 of Plaintiff's request are part of the FBI's investigation into the Russian Government's efforts to interfere in the 2016 Presidential Election," which is "clearly within the law enforcement duties of the FBI to detect and undertake counterintelligence and national security investigations, and to investigate possible violations of Federal criminal laws").

In justifying its withholding of those records and information responsive to items 1 through 3, the FBI cannot explain its invocation of Exemption 7(A) on a document-by-document basis. That is because doing so would itself reveal information that would interfere with the ongoing Russia investigation.  Providing details, such as the precise nature of any particular documents, or even the total volume of responsive records, would itself reveal sensitive and closely held FBI information not just to the requesters and the general public, but also to present and future targets, witnesses, and subjects of this ongoing investigation, as explained by the Hardy Declaration:

> Providing a document-by-document *Vaughn* index or description of the records responsive to Plaintiffs' request would undermine the very interests that the FBI seeks to protect under Exemption (b)(7)(A).  Specifically, identifying the precise number of particular types of records and describing their contents would reveal non-public information about the targets and scope of the investigation, where the FBI is focusing or has focused its resources at any given period of time, and what investigative techniques and procedures are being or have been deployed. . . . [P]remature disclosure of such information in the context of this active and sensitive investigation could reasonably be expected to adversely affect it. Similarly, disclosing the total volume of responsive information . . . would reveal information about the nature, scope, focus, and conduct of the investigation, and thus cannot be publicly disclosed without undermining the law enforcement interests the FBI is seeking to protect by application of Exemption (b)(7)(A) in this case.

Hardy Decl. ¶ 27.  Accordingly, rather than justify its reliance on Exemption 7(A) on a document-by-document basis, the FBI has invoked Exemption 7(A) on a categorical basis, over all

records responsive to items 1 through 3 of Plaintiff's request – after first reviewing those documents, assigning them to a relevant category, and documenting (in a sworn declaration) the harms that would result from the release of each category of documents.

The D.C. Circuit has long recognized that, in cases like this one, an agency may proceed in this manner – by "grouping documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation,'" without providing document-specific information. *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Campbell v. HHS*, 682 F.2d 256, 265 (D.C. Cir. 1982)); *accord Manning v. DOJ*, 234 F. Supp. 3d 26, 35 (D.D.C. 2017) ("Such a document-by-document approach is not required, however, when invoking Exemption 7(A). Instead, '[c]ategorical withholding is often appropriate under Exemption 7(A).'" (quoting *CREW*, 746 F.3d at 1098)); *Judicial Watch v. DHS*, 59 F. Supp. 3d 184, 193–94 (D.D.C. 2014) (information properly withheld pursuant to categorical invocation of Exemption 7(A) where providing detailed description of investigative documents withheld would undermine the interests that DHS and FBI sought to protect); *Owens v. DOJ*, No. 04-1701 (JDB), 2007 WL 778980, at *8 (D.D.C. Mar. 9, 2007) (same). The Supreme Court itself has endorsed this approach, acknowledging that the text of Exemption 7(A) "contemplate[s] that certain generic determinations might be made" to withhold documents on a categorical basis in appropriate cases. *Robbins Tire*, 437 U.S. at 223–24; *see also id*. at 236 ("We conclude that Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'"). Therefore, the FBI's decision to invoke Exemption 7(A) on a

categorical basis is justified by the harms, outlined in the Hardy Declaration, which would result from responding to items 1 through 3 of Plaintiff's request on a document-by-document basis.

### C.   The FBI Has Released As Much Information As Possible About The Responsive Documents In The Relevant Investigative Files

Consistent with procedures that have been endorsed by the Supreme Court and implemented by the D.C. Circuit, *see Robbins Tire*, 437 U.S. at 223–24; *Bevis*, 801 F.2d at 1388–89, the FBI has searched for and reviewed all documents that are responsive to items 1 through 3 of Plaintiff's request, and assigned them to three "functional categories" in order to provide the Court sufficient information to "trace a rational link between the nature of the document and the alleged likely interference" with law-enforcement proceedings that justifies its withholding. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

The Hardy Declaration identifies, in reasonably specific detail, the precise categories and types of responsive records being withheld, and the likely interference with the Special Counsel's Russia investigation that would result from the release of each category of information. *See Bevis*, 801 F.2d at 1389–90.   First, the Hardy Declaration explains how the FBI "reviewed and categorized" the responsive records in this case into three "functional categories": (1) "Investigative Records or Information," (2) "Evidentiary Records or Information," and (3) "Administrative Records or Information."   Hardy Decl. ¶ 32.   Then, most importantly, as explained in the Hardy Declaration and in further detail below, the FBI articulated in reasonably specific detail the sorts of harm that would "result from releasing (or even disclosing any further information about) the responsive records that fall within each functional category."   *Id.* ¶ 33. Finally, as laid out in a detailed table in the Hardy Declaration, the FBI also provided additional

context regarding the precise "type" of each responsive record in this case. *Id.* ¶ 31. FOIA requires no more.[5]

*Category 1: Investigative Records or Information.* First, the FBI withheld responsive records that fall within the functional category of "investigative" information, which, at a high level, "includes records of law enforcement methods or procedures undertaken in furtherance of the investigation, to include requests for authority to engage in various investigatory activities or employ particular methods or procedures; the results of such activities, methods, or procedures; and the collection, analysis, and dissemination of information obtained through utilization of these activities, methods, or procedures." *Id.* ¶ 34.[6]

In particular, the records protected in this functional category include



. Hardy Decl. ¶ 36. This information cannot be released without interfering with the investigation, so it is protected under Exemption 7(A): "

could reasonably be expected to interfere with it." *Id.*

---

[5] To be clear, the FBI is not "resort[ing] to a file-by-file 'blanket' justification" to withhold responsive records, solely on the basis of their being located in the relevant investigatory files. *Crooker*, 789 F.2d at 67. To the contrary, the FBI has "ma[de]  a presentation that will allow the district court to comprehend how each withheld document or category of documents, if disclosed, would interfere with an ongoing investigation[,]" which is the sort of "generic justification," on a categorical basis, that the D.C. Circuit has approved. *Id.* (footnote omitted); *see also Edmonds v. FBI*, 272 F. Supp. 2d 35, 54–55 (D.D.C. 2003) ("Defendant has invoked this exemption to withhold the entire OPR investigatory file . . . . Defendant does not, however, assert that these documents are protected from disclosure based solely on the fact that they are contained in investigatory files. . . . Defendant has . . . provided a detailed discussion of the materials contained within each functional category and the reasons that disclosure would interfere with the pending investigations." (citations omitted)).

[6] For the reasons explained in the *in camera*, *ex parte* version of the Hardy Declaration, the basis for these withholding is, in part, itself law-enforcement sensitive, exempt information under FOIA Exemption 7(A), as its release to the requester or the general public would itself interfere with the Special Counsel's investigation. Accordingly, those portions of the declaration, quoted here, will be filed on the public docket only in redacted form. The FBI will seek leave to submit a fully unredacted version of this brief and the Hardy Declaration to chambers.

As is likely obvious, "

," and the release of information regarding

." *Id.* This, in turn, could have a chilling

effect on the current investigation and any future prosecutions and have a negative effect on

. *Id.* Accordingly, "the release of

." *Id.*; *see also, e.g.*, *Owens*, 2007 WL 778980, at *8 ("[T]he new categories, along

with the descriptions provided by Hardy, demonstrate that release of the documents would place

on the public record information about the government's investigative strategy, the identities of

sources and suspects, the nature and existence of video and photographic evidence, and the type

of secure communications equipment used by government agents." (citation omitted)).

The functional category of investigative information also includes "information exchanged

between the FBI and its partners" in other government agencies ("OGAs").  Hardy Decl. ¶ 35.

Release of such information "would disclose evidence, investigative information, law enforcement

methods and procedures being utilized in this investigation, and criminal intelligence developed

by the FBI and OGAs/other law enforcement agencies that have cooperated with and provided

information to the FBI, and that are still doing so, in the pending investigation." *Id.* As explained

in detail in the Hardy Declaration, this information must be protected, as releasing it prematurely

"would reveal the scope and focus of the investigation; identify and tip off individuals of the FBI's

interest in them; and provide suspects or targets the opportunity to destroy evidence and alter their

behavior to avoid detection." *Id.*

Those sorts of harms are all protected under Exemption 7(A). *See, e.g.*, *Owens*, 2007 WL 778980, at *8 ("The Hardy Declaration also explains that which is obvious given the nature of the information in the documents: the likelihood that disclosure would reveal sensitive strategic information, endanger sources, alert potential suspects, lead to the destruction of evidence, and increase the risk that agents in the field will be detected."); *Edmonds*, 272 F. Supp. 2d at 55 ("The release of these documents could interfere with the investigations by revealing the nature and scope of the investigations, investigative activities, the cooperation of particular individuals, the identity of potential witnesses, and the investigative steps taken to pursue interviews with individuals who can inform investigators." (citation omitted)); *Cucci v. DEA*, 871 F. Supp. 508, 511 (D.D.C. 1994) (upholding categorical invocation of Exemption 7(A) to protect, among other things, "inter-agency correspondence" and "information exchanged between the FBI and local law enforcement agencies," because release of further information "could lead to the loss of vital communications from other cooperating law enforcement entities providing information to the FBI in confidence" (citation omitted)).

***Category 2: Evidentiary Records or Information.*** The FBI is also withholding responsive records that fall within the functional category of "evidentiary" information. "This category includes copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence." Hardy Decl. ¶ 37. As a general matter, evidence is pertinent and integral to any investigation, and its premature disclosure could reasonably be expected to interfere with a pending investigation.

Within this functional category, particular documents "include information about documentary evidence being gathered in the investigation; they discuss, describe, or analyze the documentary evidence; and they reflect the investigatory methods and procedures used to obtain

the evidence." *Id*. ¶ 38.  Releasing this information would reveal "the scope and focus of the investigation; who the FBI is investigating, why, and for what specific activities; the identities of witnesses and cooperators; and the participation and cooperation of OGAs/other law enforcement agencies in the investigation." *Id*.  The Hardy Declaration further explains, in significant detail, the basis for the FBI's particular concerns with revealing this information with regards to the ongoing investigation:

> Disclosure of such information would arm subjects, persons of interest, and others intent on obstructing the investigation with the information necessary to take defensive actions to conceal their activities; elude detection and surveillance; suppress, destroy, or fabricate evidence; and/or interfere or attempt to interfere with or intimidate witnesses, sources, and cooperators.

*Id*.; *see also Manning*, 234 F. Supp. 3d at 36 (upholding FBI's categorical invocation of Exemption 7(A) over a category of records titled "Evidentiary/Investigative Materials"); *Owens*, 2007 WL 778980, at *8 (upholding the FBI's categorical invocation of Exemption 7(A) to withhold investigative records from a functional category of "Evidentiary Documents," reasoning that, among other things, disclosures could "reveal 'the size, scope, and direction of [the] investigation,'" or "permit suspects to avoid arrest and prosecution, 'destroy or alter evidence, fabricate fraudulent alibis, and take other actions to frustrate the government's case'" (quoting *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 386 (D.C. Cir. 2007))).

Finally, the Hardy Declaration explains again (and further justifies) the withholding of ████████████████████████ and information exchanged between the FBI and other government agencies within this functional category, for much of the same reasons already explained above with respect to similar investigative records.  *See supra* Section I.C, Category 1; *see also* Hardy Decl. ¶ 39 ("As explained above, release of information exchanged between the FBI and its partners would not only reveal investigative information and law enforcement methods and procedures being used in the FBI's investigation, it would also reveal evidence and criminal

intelligence developed by the FBI and OGAs/other law enforcement agencies that have cooperated

with and provided information to the FBI, and that are still doing so, in the pending

investigation."); Hardy Decl. ¶ 40 ("███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████"); *accord Cucci*, 871 F. Supp. at 511.

  ***Category 3: Administrative Records or Information.*** Finally, some responsive records

are being withheld from the functional category of "administrative" information. This category

includes "administrative instructions and information about investigative activities that have been

conducted or are contemplated, in order to monitor the progress of the investigation and facilitate

its conduct." Hardy Decl. ¶ 42. As explained in detail in the Hardy Declaration, disclosure of this

information could reveal or confirm:

> the use or contemplated use of particular law enforcement techniques and
> procedures, the effectiveness of those techniques and procedures; and guidelines or
> instructions for their use; the cooperation of OGAs/law enforcement agencies in the
> investigation; the identities of sources, witnesses, targets, and other individuals of
> potential investigative interest; the focus, scope, and anticipated trajectory of the
> investigation; any potential or perceived challenges in the investigation; and
> requests for specific investigative inquiries and affirmative taskings to various FBI
> field offices or to other government or law enforcement agencies (*i.e.*, investigative
> leads).

*Id*. Moreover, "[d]isclosure of this information would provide a road map of the FBI's

investigation," and would potentially expose "actual and anticipated witnesses and sources," as

well as "arm[ ] adversaries with information necessary to avoid particular techniques and

procedures, develop countermeasures, and destroy or fabricate evidence." *Id*. ¶ 43.

  In addition, the FBI is withholding materials like "storage envelopes, transmittal forms,

and standardized forms," because "the manner in which they have been used and organized in the

files in and of itself reveals information of investigative value." *Id*. ¶ 44. Although the release of

this category of information might seem harmless to a layperson, in fact, "[f]or example, a 1A

envelope may be used to store records obtained from a confidential source or witness," and might include "handwritten notations" that "identify dates, places, and the identities of the sources providing the information."  *Id*.  Releasing such documents "could harm the investigation by providing details that, when viewed in conjunction with knowledge possessed by subjects or others knowledgeable about matters being investigated, would provide information useful in identifying witnesses and ascertaining investigative strategies and items of evidence."  *Id*.; *see also Manning*, 234 F. Supp. 3d at 36 (upholding FBI's categorical invocation of Exemption 7(A) for a category titled "administrative materials"); *Owens*, 2007 WL 778980, at *8 (same, for "Administrative Documents"); *Cucci*, 871 F. Supp. at 511 (same, for "Administrative Materials").

Finally, the Hardy Declaration provides additional context and descriptions of different "types" of responsive documents in the relevant investigative file, in a lengthy table that describes each type of record in reasonably specific detail.  *See* Hardy Decl. ¶ 31.  Although, under D.C. Circuit precedent, the FBI's withholding can be justified solely in reference to the three high-level functional categories described above, this additional context regarding the "types" of withheld records provides both the Court and the Plaintiff with additional information about the nature of those records, while still avoiding any harms protected under Exemption 7(A).[7]

**D.    No Reasonably Segregated Non-Exempt Information Exists**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this

---

[7] To be precise, every responsive record (1) fits within one of the "types" of records provided in the table quoted above, and (2) fits within one or more of the three functional categories that are the basis of the FBI's categorical withholding under Exemption 7(A).  *See* Hardy Decl. ¶¶ 31-32. Although the "types" of records are distinct, there is some overlap between the three "categories" – for example, some investigative or evidentiary records might also include some administrative information.  *Id*.

subsection." 5 U.S.C. § 552(b).  The FBI has met that burden here because the Hardy Declaration

establishes that no such information exists.  As discussed above, with the exception of a reasonably

detailed description of the categories and types of responsive records from the relevant

investigative files, the FBI has concluded that the disclosure of any additional information related

to the Special Counsel's investigation could reasonably be expected to interfere with it.  *See* Hardy

Decl. ¶ 46 ("[G]iven the on-going nature of the investigation, the sensitivities of the materials, and

the reasonable expectation of harm from premature disclosure . . ., the FBI has concluded that no

non-exempt information exists that can be reasonably segregated and released to plaintiff"); *see*

*also supra* Section I.C.  And the FBI has explained the basis for that conclusion in a reasonably

specific, detailed affidavit, which offers strong support for the FBI's conclusions that disclosing

"any further details about this determination . . . risks the very harms that the FBI is trying to avoid

by relying on Exemption (b)(7)(A)."  Hardy Decl. ¶ 46.

Courts routinely enter summary judgment on the issue of segregability for law-enforcement

agencies on the basis of similar affidavits in Exemption 7(A) cases.  *See Manning*, 234 F. Supp.

3d at 38 ("The court need not determine the precise scope of an agency's segregation duty when

it invokes the categorical approach under Exemption 7(A) because, on the facts presented, the

court is satisfied Defendants carried out their duty here."); *Robbins, Geller, Rudman & Dowd, LLP*

*v. SEC*, No. 3:14-CV-2197, 2016 WL 950995, at *8 (M.D. Tenn. Mar. 12, 2016) (SEC properly

determined that responsive records did not contain any reasonably segregable information because

of the way the plaintiff phrased its FOIA request, which sought all documents provided by Walmart

to the SEC that related to potential violations of the Foreign Corrupt Practices Act); *Dillon v. DOJ*,

102 F. Supp. 3d 272, 298 (D.D.C. 2015) (FBI satisfied segregability obligation under FOIA by

explaining that segregability was not possible for a majority of records because they were exempt

from disclosure in their entirety pursuant to Exemption 7(A)); *EPIC v. DOJ*, 82 F. Supp. 3d 307, 322 (D.D.C 2015) (agency supported its determination that there was no segregable material in investigative records withheld under Exemption 7(A) with sufficiently detailed declaration); *Cucci*, 871 F. Supp. at 512 ("Because the [FBI] has met its burden of showing that all [of] its records are exempt and relate to the continuing investigations . . . there are no non-exempt portions of the records to segregate"). Therefore, the FBI is entitled to summary judgment on this issue. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." (citing *Boyd*, 475 F.3d at 391)).

*      *      *

The Hardy Declaration provides a detailed accounting of the categories and types of records contained, as of March 20, 2017, in the relevant investigative files that contain all records responsive to items 1 through 3 of Plaintiff's request – that is, the FBI investigation disclosed by former FBI Director Comey on March 20, 2017, which is now being led by Special Counsel Mueller, into Russian interference with the 2016 Presidential Election. Revealing any additional information about these highly sensitive records would itself interfere with the investigation by causing specific sorts of harms with respect to the release of specific categories of responsive documents. Accordingly, for these reasons, the FBI's categorical withholding of all records responsive to items 1 through 3 of Plaintiff's request under Exemption 7(A) is justified, and the Court should enter summary judgment on behalf of the FBI.

## II. THE FBI CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO ITEM 4 OF PLAINTIFF'S REQUESTS AND PROPERLY REDACTED EXEMPT PORTIONS OF RESPONSIVE RECORDS

The FBI responded to item 4 of Plaintiff's request by searching for and producing all responsive records subject to FOIA. In that production, the FBI redacted certain information

pursuant to Exemptions 1, 3, and/or 7(E).  Plaintiff does not challenge the FBI's redactions justified

by Exemption 7(E).  *See* Hardy Decl. ¶ 11 & ECF No. 18.  Plaintiff does challenge the adequacy

of the FBI's search, its redactions justified by Exemptions 1 and 3, and its release of reasonably

segregable, non-exempt information.  *Id*.  As explained in the Hardy Declaration, the FBI

conducted an adequate search, produced all reasonably segregable, non-exempt information, and

made proper redactions.  As such, the FBI is entitled to summary judgment.

### A.      The FBI Conducted An Adequate Search for Records Responsive to Items 4 of Plaintiff's Request

As discussed above, *supra* Section I.A, the FBI need only demonstrate that it has

"conducted a search reasonably calculated to uncover all relevant documents."  *Steinberg*, 23 F.3d

at 551 (citation omitted)).  "In demonstrating the adequacy of the search, the agency may rely upon

reasonably detailed, nonconclusory affidavits submitted in good faith."  *Id*.  It is well-settled that

an agency's search for responsive records "need not be perfect, only adequate, and adequacy is

measured by the reasonableness of the effort in light of the specific request."  *Meeropol v. Meese*,

790 F.2d 942, 956 (D.C. Cir. 1986).  In the absence of "countervailing evidence or apparent

inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the

search conducted by the agency will suffice."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Moreover, "[a]n agency is not required to search all of its records systems if searches of

particular systems 'are unlikely to produce any marginal return.'"  *Hall v. CIA*, 881 F. Supp. 2d

38, 57 (D.D.C. 2012) (quoting *Campbell v. U.S. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998)).

Item 4 of Plaintiff's request seeks a relatively narrow category of records: "memos, reports,

guidelines, and procedures pertaining to the FBI's procedure to notify targets of cyber attacks."

*See* Ex. A to Hardy Decl. at 6.  Because this request sought records related to FBI procedures,

rather than any investigative records, the FBI determined that a standard CRS search would not be

appropriate.  Hardy Decl. ¶ 52.  Instead, the FBI's Record/Information Dissemination Section ("RIDS") conducted a search of the FBI's "Policy Portal," which "is located on the intranet of the FBI's classified enclave, and is the location where the FBI maintains current agency policies and policy guides/guidance."  *Id.* ¶ 53.  As the Hardy Declaration makes clear, "there is no other official repository" for the current agency policies and policy guides that Plaintiff seeks.  *Id.*

The Policy Portal has a search feature that allows users to search the titles of all official FBI policies for specific terms.  *Id.* ¶ 54.  Because item 4 specifically focuses on cyber attacks, and because investigating cyber attacks is the responsibility of the FBI's Cyber Division, *id.* ¶ 55, RIDS searched the Policy Portal for the term "Cyber Division Policy Guide."  *Id.* ¶ 54.  RIDS also searched the Policy Portal using the term "Foreign Intelligence Surveillance Act and Standard Minimization Procedures Policy Guide" based on a recommendation from the Unit Chief of the FBI's National Security Unit, who had worked for many years as the Unit Chief of RIDS's Office of General Counsel, National Security and Cyber Law Branch ("NSCLB"), another unit with significant experience with cyber crimes and investigations.  *Id.*  After locating each of these guides, RIDS reviewed their tables of contents and conducted text searches of the entire guides using the following terms: victim notification, targets, notification, duty to warn, disclosure, cyber attacks, and computer intrusion.  *Id.*  Responsive pages were located within each guide and processed.  *Id.*

In addition to this Policy Portal search, RIDS contacted the FBI offices "most likely to have knowledge of the requested policy related items responsive to item 4: OGC's NSCLB and the Cyber Division."  *Id.* ¶ 55.  As noted above, the Cyber Division is an FBI headquarters division dedicated to addressing cyber crime.  Because it "heads the national effort to investigate cyber crimes, including cyber-based terrorism, espionage, computer intrusions, and major cyber fraud,"

the Cyber Division is a "subject matter expert on cyber crimes and investigations," and RIDS reasonably determined that it would be able to identify policy and guidance records, related specifically to cyber attacks, that would be responsive to item 4. *Id.* Relatedly, NSCLB provides legal guidance to the Cyber Division about its operation and activities. Together, the Cyber Division and NSCLB confirmed that the policies that RIDS had already located on the Policy Portal were responsive to item 4 and identified other policies responsive to that portion of Plaintiff's request. In short, the subject matter experts at the Cyber Division and NSCLB confirmed that "the body of policies located by and provided to RIDS are those that govern the work of the Cyber Division with respect to notifying victims or targets of cyber attacks," that, other than these policies, "the FBI does not rely on any other policies or guidance documents regarding notifications to targets or victims of cyber attacks," and that "there are no other records responsive to item 4 of Plaintiff's request." *Id.*

Through these searches, the FBI has searched all locations reasonably likely to have records, and therefore conducted an adequate search under FOIA. *See Steinberg*, 23 F.3d at 551–52.

### B. The FBI Properly Redacted Certain Portions of Responsive Records Under Exemption 1

FOIA Exemption 1 protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 1 thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by Executive order." *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981). An agency can establish that it has properly withheld information under Exemption 1 if it demonstrates that

it has met the classification requirements of Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526").

Section 1.1 of E.O. 13526 sets forth four requirements for proper classification: (1) an original classification authority classifies the information; (2) the United States Government owns, produces, or controls the information; (3) the information falls within one or more categories of information listed in section 1.4 of [E.O. 13526]; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security. E.O. 13526, § 1.1(a). In Section 1.4, the executive order establishes eight categories of classification. Of relevance here, the order provides that information may be classified if it concerns: "(c) intelligence activities (including covert action), intelligence sources or methods, or cryptology." *Id*. § 1.4.

In reviewing classification determinations under Exemption 1, courts have repeatedly stressed that "substantial weight" must be accorded agency affidavits concerning classified status of the records at issue, and that if such an affidavit shows that the information logically falls within the exemption, summary judgment is appropriate on the basis of that affidavit alone. *E.g.*, *ACLU v. U.S. DoD*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984). Moreover, where an agency's statement contains "reasonable specificity of detail" demonstrating that the withheld information "logically falls within the claimed exemption," and there is no evidence in the record to suggest otherwise, "the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (noting that to conduct this type of inquiry "would violate the principle of affording substantial weight to the expert opinion of the

agency").  In short, as the D.C. Circuit has explained, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."  *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).

Here, the FBI redacted portions of a single responsive document, its Foreign Intelligence Surveillance Act and Standard Minimization Procedures Policy Guide, pursuant to Exemption 1.[8] *See* Hardy Decl. ¶ 57.  As explained in the Hardy Declaration, the information withheld in the redacted portions of this document meets the conditions for classification.  *See Judicial Watch, Inc. v. U.S. DoD*, 715 F.3d 937, 940 (D.C. Cir. 2013) ("Agencies may establish the applicability of Exemption 1 by affidavit (or declaration).").

The first and second conditions to classification are easily met.  Mr. Hardy has been designated by the Attorney General as an original classification and declassification authority pursuant to E.O. 13526, *see* Hardy Decl. ¶ 2, and he determined that the challenged information withheld pursuant to Exemption 1 is appropriately classified.  *See id.*  ¶ 63.  Second, the United States government owns or controls the information that has been withheld from Plaintiff.  *Id.* ¶ 64.

With respect to the third condition, the redacted portions of the Foreign Intelligence Surveillance Act and Standard Minimization Procedures Policy Guide fall within the protected category of information concerning "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  *See* Hardy Decl. ¶ 64 (citing E.O. 13526, § 1.4(c)).  As explained in the Hardy Declaration, an intelligence activity, source, or method "includes any intelligence action or technique utilized by the FBI against a targeted individual or organization

---

[8] As explained in the Hardy Declaration, some of the redacted information on these pages is not responsive to item 4 of Plaintiff's request because it does not concern how the FBI notifies targets of cyber attacks.  The information was processed, and redacted as classified, because it appeared on the same page as responsive information.  *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 679 (D.C. Cir. 2016).

that has been determined to be of national security interest, and includes any procedure (human or non-human) utilized to obtain information concerning such individual or organization." *Id*. ¶ 66. Mr. Hardy specifically withheld the information from the policy guide "to protect intelligence activities, methods, and sources utilized by the FBI for gathering intelligence." *Id*. ¶ 69. Accordingly, it falls within one of the categories of information protected by Section 1.4(c).

Fourth, Mr. Hardy determined that disclosure of the redacted portions could reasonably be expected to cause serious damage to the national security, *id*. ¶ 71, and is thus appropriately classified at the Secret level, *id*. ¶ 73. Recognizing that national security is a uniquely executive purview, courts typically defer to such an agency determination. *Ctr. for Nat'l Sec. Studies v. U.S. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977). Moreover, as the D.C. Circuit has recognized, an entity making a classification determination cannot view information in isolation; "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, [each detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself." *Larson*, 565 F.3d at 864 (citation omitted); *ACLU v. DOJ*, 681 F.3d 61, 71 (2d Cir. 2012) (same); *see also Shapiro v. U.S. DOJ*, 37 F. Supp. 3d 7, 25 (D.D.C. 2014); *ACLU v. CIA*, 892 F. Supp. 2d 234, 247 (D.D.C. 2012).

Here, the Hardy Declaration identifies significant harms that would attend unauthorized disclosure of the redacted information, particularly when that information is viewed in combination with other information, including publicly-available information, about the FBI's investigative procedures. The Foreign Intelligence Surveillance Act and Standard Minimization Procedures Policy Guide is currently used by the FBI to gather intelligence information, Hardy Decl. ¶ 71, and the portions redacted by the FBI contain "specific and detailed information," *id*.,

regarding the FBI's "intelligence gathering capabilities of certain intelligence activities or methods directed at specific types of targets," *id*. ¶ 70.  Disclosure of procedures of how the FBI conducts surveillance under FISA, handles FISA-derived information, and otherwise implements and utilizes this intelligence technique would reveal classified information about the intelligence activity or method, and would undermine or potentially negate the effectiveness of this very important intelligence-gathering technique, thereby risking serious harm to the national security. *Id*.  Armed with this information, "hostile entities could develop countermeasures that would severely disrupt the FBI's intelligence-gathering capabilities," which would ultimately cause severe damage to the FBI's "efforts to detect and apprehend violators of national security and criminal laws of the United States." *Id*. ¶ 72.  The FBI cannot provide any further explanation of the withheld information on the public record without revealing classified facts.[9]

The Court should defer to the FBI's predications of the harm that would result from unauthorized disclosure of the information withheld from the Plaintiff, and uphold the FBI's withholding under Exemption 1.  *See Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C. Cir. 1982) ("This is necessarily a region for forecasts in which informed judgment as to potential future harm should be respected."); *Abdeljabbar v. Bureau of Alcohol, Tobacco, and Firearms*, 74 F. Supp. 3d 158, 171 (D.D.C. 2014) (noting that "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record" (quoting *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927)).  This is especially true in this case, where the redacted information was "not examined in isolation," but "with careful consideration given to the impact that its disclosure will have on other sensitive

---

[9] If the Court deems it necessary, the FBI can provide additional information in an *in camera*, *ex parte* submission.

information contained elsewhere in the United States intelligence community's files." Hardy Decl.

¶ 65. *See Edmonds v. DOJ*, 405 F. Supp. 2d 23, 32–33 (D.D.C 2005) (upholding FBI's withholding

of information that formed "a 'mosaic' of classified information about the methods and activities

still used by the FBI to gather intelligence," and recognizing that "judges lack the expertise

necessary to second-guess such agency opinions in the typical national security FOIA case").

### C.     The FBI Properly Redacted Certain Portions Of Records Under Exemption 3

The FBI's withholdings under Exemption 3 are coextensive with its withholdings under

Exemption 1.  Therefore, if the Court upholds the challenged withholdings pursuant to Exemption

1, it need not reach the FBI's Exemption 3 arguments.  *See ACLU v. CIA*, 892 F. Supp. 2d at 245

("A showing that information satisfies any one FOIA exemption is sufficient to justify

withholding."); *e.g.*, *Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 n.10 (D.D.C. 2010) ("Because the

CIA seeks to withhold the same information under both Exemption 1 and Exemption 3, and

because the defendant has properly invoked Exemption 1, the court does not consider whether the

defendant properly invoked Exemption 3." (citation omitted)).  Nonetheless, the FBI properly

withheld records pursuant to Exemption 3, and that proper withholding is dispositive in this case.

FOIA Exemption 3 protects information that is "specifically exempted from disclosure by

statute."  5 U.S.C. § 552(b)(3).  Such a statute must "(i) require[] that the matters be withheld from

the public in such a manner as to leave no discretion on the issue; or (ii) establish[] particular

criteria for withholding or refer[] to particular types of matters to be withheld."

*Id*. § 552(b)(3)(A)(i).  In analyzing the propriety of a withholding taken pursuant to Exemption 3,

the Court need not examine "the detailed factual contents of specific documents" in which

withholding have been taken.  *Morley*, 508 F.3d at 1126.  Rather, the "sole issue for decision"

under Exemption 3 "is the existence of a relevant statute and the inclusion of withheld material

within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990) (same).   As is the case with Exemption 1, "substantial weight [is] owed to agency explanations in the context of national security, to qualify for withholding under" Exemption 3.  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 840 (D.C. Cir. 2001); *see also EPIC v. ODNI*, 982 F. Supp. 2d 21, 31 (D.D.C. 2013) ("special deference [is] owed to agency affidavits on national security matters," in considering invocations of Exemption 3) (citation omitted)).

In this case, the applicable statute is the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), which protects "intelligence sources and methods from unauthorized disclosure." Hardy Decl. ¶ 76.  As discussed in detail above, with respect to Exemption 1, the information the FBI redacted in the Foreign Intelligence Surveillance Act and Standard Minimization Procedures Policy Guide would reveal FBI intelligence, activities, sources, and methods.  *See* Hardy Decl. ¶ 79 ("The FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiff, and therefore, that it is prohibited from disclosing [the redacted information] under the National Security Act of 1947 [ ].").  Because the National Security Act of 1947, as implemented by the Director of National Intelligence through Intelligence, protects intelligence sources and methods used by the intelligence community as a whole, *id*. ¶ 78, and the FBI is a constituent agency of the intelligence community, *id*., the information revealing FBI intelligence sources and methods are within the scope of this Exemption 3 statute and properly withheld from the Plaintiff.

### D.    The FBI Released All Reasonably Segregable Portions of Responsive Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  An agency has no obligation to segregate non-exempt material

that is so "inextricably intertwined" that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufield v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981) (citation omitted), *abrogated on other grounds by Church of Scientology of Calif. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986).   A court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated."   *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citation omitted).

As discussed above, the FBI's search pursuant to item 4 of Plaintiff's request located 106 pages of responsive records, 89 of which were released in full and 17 of which were released with partial redactions.   "No pages were withheld in full."   Hardy Decl. ¶ 51.   Plaintiff's segregability challenge, then, is to documents that have already been partially redacted pursuant to the FBI's careful review for reasonably segregable, non-exempt information.   *See id.* ¶ 82 ("Following its line-by-line review of the documents to identify exempt information and segregate any reasonably segregable, non-exempt information, RIDS determined that certain information on 17 pages responsive to item 4 was exempt but that the pages could otherwise be released once such information was redacted.").   The FBI determined that each of the 17 partially redacted pages is "comprised of a mixture of non-exempt information that could reasonably be segregated for release; information that is exempt under one or more FOIA exemptions; and information that is so inextricably intertwined  with exempt information that it was not reasonably segregable because once all exempt information was accounted for, the only remaining information would consist of disjointed words, phrases, or sentences that taken separately or together would have minimal or no information content."   *Id.*   From these responsive records, "[t]he non-exempt information that could be reasonably segregated for release was provided to plaintiff.   The remaining information

was determined to be exempt or not reasonably segregable." *Id.* The FBI has thus met its burden,

and courts in this Circuit routinely enter summary judgment on the issue of segregability based on

similar agency declarations. *See, e.g.*, *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771,

776–777 (D.C. Cir. 2002) (agency demonstrated there was no reasonably segregable non-exempt

information where it submitted affidavit showing that agency had conducted line-by-line review

of each document withheld in full); *see also Sussman*, 494 F.3d at 1117 ("Agencies are entitled to

a presumption that they complied with the obligation to disclose reasonably segregable material."

(citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should grant the FBI's motion for summary judgment.

Dated: October 12, 2017                           Respectfully submitted,

                                                  CHAD A. READLER
                                                  Acting Assistant Attorney General

                                                  MARCIA BERMAN
                                                  Assistant Branch Director

                                                  */s/ R. Charlie Merritt*
                                                  R. CHARLIE MERRITT
                                                  Trial Attorney (VA Bar No. 89400)
                                                  U.S. Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Ave. NW
                                                  Washington, DC 20530
                                                  Tel.: (202) 616-8098
                                                  Fax: (202) 616-8470
                                                  Email: robert.c.merritt@usdoj.gov

                                                  *Counsel for Defendant*