**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL BUREAU OF INVESTIGATION**, <br><br> Defendant. | Case No. 1:17-cv-00121 (TNM) |

**MEMORANDUM OPINION**

The Electronic Privacy Information Center, or EPIC, challenges the way that the Federal Bureau of Investigation has responded to its Freedom of Information Act request for records related to Russian interference in the 2016 presidential election. EPIC questions the adequacy of the FBI's search for responsive records, the propriety of the FBI's withholdings and redactions, and the accuracy of the FBI's segregability determination. But because the FBI has shown that it conducted an adequate search and that it properly withheld and redacted non-segregable records under FOIA Exemptions 1, 3, and 7(A), the FBI's Motion for Summary Judgment will be granted and EPIC's Cross-Motion for Summary Judgment will be denied.

**I. BACKGROUND**

EPIC's FOIA request states generally that it "seeks records pertaining to the FBI's investigation of Russian interference in the 2016 U.S. Presidential Election." EPIC's FOIA Request 1, attached to Mot. Summary J. Decl. of David M. Hardy (Hardy Decl.) as Ex. A. It provides several pages of background to the request, explaining EPIC's interest in Russian cyber attacks on the Republican National Committee, the Democratic National Committee, and the

Democratic Congressional Campaign Committee. *Id.* at 1-5. It then makes itemized records requests for:

> (1) All records, including but not limited to, memos, reports, guidelines, procedures, summaries, and emails pertaining to the FBI's investigation of Russian-sponsored cyber attack on the RNC, DNC, and DCCC.
> (2) All records of communications to the RNC, DNC, and DCCC regarding the threat of Russian interference in the 2016 Presidential election.
> (3) All records of communications with other federal agencies regarding Russian interference in the 2016 Presidential election.
> (4) All records including, but not limited to, memos, reports, guidelines, and procedures pertaining to the FBI's procedure to notify targets of cyber attacks.

*Id.* at 6. The FBI searched for responsive records, but withheld all records responsive to Items 1-3 and heavily redacted some records responsive to Item 4. The FBI seeks summary judgment, arguing that it conducted an adequate search; that its withholdings and redactions are necessary to protect an ongoing investigation, to protect classified information, and to protect intelligence sources and methods; and that it has released all reasonably segregable information to EPIC. EPIC also seeks summary judgment, arguing that the FBI has not made an adequate showing on any of these issues.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (creating a disclosure obligation only where a request "reasonably describes" the records sought). Thus, a FOIA defendant is entitled to summary judgment if it shows that there is no genuine dispute about

whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). Courts decide the "vast majority" of FOIA cases on motions for summary judgment. *See Brayton v. Office of United States Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To show that any unproduced documents are exempt from FOIA, an agency may file "affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). Courts review the applicability of FOIA exemptions *de novo* but give "substantial weight to detailed agency explanations" of national security concerns related to FOIA disclosures. *Id.*

To show that any unproduced documents are unidentifiable, a defendant must show "a good faith effort to [] search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In other words, the defendant must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). The touchstone of the analysis is the reasonableness of the search, not the records produced. *See Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("[T]he adequacy of a search is determined not by the fruits of the search, but by the appropriateness of [its] methods."); *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("[A] search, under FOIA, is not unreasonable simply because it fails to produce all relevant material.").

An agency may exercise discretion in crafting its search to meet this standard, and does not have to search every system if additional searches are unlikely to produce any marginal

return. *See Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Searching for records requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003). To prove the reasonableness of its search, an agency can submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. Agency declarations enjoy "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

### III. ANALYSIS

#### A. The FBI Conducted an Adequate Search

The FBI's Motion for Summary Judgment relies on a declaration by David Hardy to establish the adequacy of its search for responsive records.[1] The Hardy Declaration explains that "the pending Russian interference investigation files were identified as those containing records responsive to items 1-3," based on consultation with internal subject-matter experts familiar with the investigation and records. Hardy Decl. ¶ 17. These experts handle national security matters in the FBI's Office of the General Counsel and were readily familiar with the likely location of documents responsive to EPIC's queries given the sensitive and high-profile nature of the topic. *Id.* The FBI manually searched and reviewed the relevant files in their entirety. *Id.* ¶ 18. Although Item 1 of EPIC's FOIA request specifically asks for information related to "cyber

---

[1] I focus here on the FBI's search for records responsive to Items 1-3 of EPIC's FOIA request because EPIC does not dispute the adequacy of the search for records responsive to Item 4.

4

attack on the RNC, DNC, and DCCC," the FBI construed the request broadly because of EPIC's more general statement of interest in "records pertaining to the FBI's investigation of Russian interference in the 2016 U.S. Presidential Election." *Id.* at 7 n.4. In fact, the FBI interpreted the request as an effort to obtain "all records from that investigation." *Id.*

EPIC argues that the FBI conducted an unreasonably narrow search because it "construed the universe of records responsive to items 1 through 3" as "co-extensive with the content of the investigative files from the FBI's Russia investigation." Memo. ISO Cross-Mot. Summary J. 15 (quoting Memo. ISO Mot. Summary J. 9). According to EPIC, this narrowed the search unreasonably since "EPIC did not request records 'co-extensive' with the Muller [sic] investigation, because that investigation was not publicly disclosed until after EPIC's request was filed." *Id.* EPIC asserts that, by limiting the search to the Russia investigation files, the FBI must have excluded other files that could reasonably contain "communications" within the scope of the FOIA request. *Id.* at 17-18. EPIC also asserts that the FBI's search must have excluded "records related to two public reports on the Russian interference jointly authored by the FBI" since the Hardy Declaration does not include the reports in its list of public statements by the FBI about the Russia investigation. *Id.* at 16-17.

EPIC misunderstands the FBI's statement that it construed the universe of responsive records as co-extensive with the Russia investigation files. In context, this statement shows that the FBI assumed EPIC would be interested in every record in those files, not that the FBI assumed EPIC would be uninterested in records stored elsewhere. *See* Memo. ISO Mot. Summary J. 7-9 (explaining that Items 1-2 of the FOIA request ask for records related to attacks on specific organizations but were construed as co-extensive with the FBI's Russia investigation file given the request's more general expression of interest in records related to Russian

5

interference). The FBI limited its search to the Russia investigation files not because it believed

EPIC had asked for this limitation but because it determined, based on consultation with subject-

matter experts, that this is where the FBI would store responsive records. Hardy Decl. ¶ 17.

This decision falls within the scope of the FBI's discretion and expertise in crafting a reasonable

search and does not make the search inadequate. *See Schrecker*, 349 F.3d at 662. Nor do EPIC's

speculations about the existence of other files containing responsive communications or records

related to the FBI's public reports alter this analysis.[2] *See Mobley*, 806 F.3d at 583 ("[A] search,

under FOIA, is not unreasonable simply because it fails to produce all relevant material.").[3]

### B. The FBI Properly Withheld Records Under FOIA Exemption 7(A)

FOIA Exemption 7(A) shields from production "records or information compiled for law

enforcement purposes" the production of which "could reasonably be expected to interfere with

enforcement proceedings." 5 U.S.C. § 552(b)(7). Exemption 7(A) often applies to criminal

---

[2] EPIC speculates that the FBI stores responsive communications outside the Russia investigation files. Memo. ISO Cross-Mot. Summary J. 17-18. But EPIC's speculation does not overcome the presumption of good faith that I must give to the FBI's statement that it maintains all related correspondence in the Russia investigation files that it searched. Reply ISO Mot. Summary J. Second Declaration of David M. Hardy (Second Hardy Decl.) ¶ 10. EPIC also contends that the existence of responsive records not included in the Russia investigation files is more than speculative and is in fact "the logical conclusion" implied by two facts in the record. Reply ISO Cross-Mot. Summary J. 3-4. First, the FBI did not include two public reports related to Russian interference in its list of public statements about the Russia investigation. *See* Hardy Decl. ¶ 14. Second, the FBI stated that none of the information in these reports matches the information in the Russia investigation files at the same level of specificity. Second Hardy Decl. ¶ 9. But EPIC's proposed inference from these facts does not overcome the presumption of good faith that I must give to the FBI's statement that it continues to believe the Russia investigation files contain all responsive records. *Id.* ¶ 10.

[3] I also note that EPIC has not rebutted the FBI's representation that a broader interpretation of the FOIA request would make it "overly broad and unduly burdensome, and inadequate to describe the records sought because the FBI would have been unable to craft a reasonable search for non-investigative records." *See* Second Hardy Decl. ¶ 8; *see also Am. Fed'n of Gov't Emps. v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (noting FOIA's requirement that a request reasonably describe the records sought and holding that "[a]n agency need not honor a request that requires an unreasonably burdensome search").

investigations: "[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008). Courts need not determine whether Exemption 7(A) applies to each document withheld, but may instead determine whether it applies to categories of documents, as long as the agency defines the categories in a way that "allow[s] a court to grasp how each . . . category of documents, if disclosed, would interfere with the investigation." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

The Hardy Declaration states that the FBI reviewed the documents in the Russia investigation files and determined that each document fits into at least one of three functional categories: (1) Investigative Records or Information; (2) Evidentiary Records or Information; and (3) Administrative Records or Information. Hardy Decl. ¶ 32. The Investigative Records or Information category "includes records of law enforcement methods or procedures undertaken in furtherance of the investigation . . . ; the results of such activities, methods, or procedures; and the collection, analysis, and dissemination of information obtained through utilization of these activities, methods, or procedures." *Id.* ¶ 34. The Evidentiary Records or Information category "includes copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence." *Id.* ¶ 37. The Administrative Records or Information category "includes administrative information contained in other records, such as case captions, serial numbers, identities of FBI field offices, dates of investigations, and administrative instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines." *Id.* ¶ 41.

7

EPIC disputes the applicability of Exemption 7(A) by making two arguments that production of these records could not reasonably be expected to interfere with enforcement proceedings. Memo. ISO Cross-Mot. Summary J. 20-25. First, EPIC argues that some records must relate to completed law enforcement proceedings since the FBI has released two reports about Russian interference and since Special Counsel Robert Mueller has obtained several indictments and plea agreements. *Id.* at 21; Reply ISO Cross-Mot. Summary J. 8-12. Second, EPIC argues the FBI may not claim a blanket exemption to withhold documents simply because they are in the Russia investigation files. Memo. ISO Cross-Mot. Summary J. 22; Reply ISO Cross-Mot. Summary J. 12.

But, contrary to EPIC's characterization, the FBI has not claimed a blanket exemption for all documents in the Russia investigation files. Instead, it has claimed three categorical exemptions for specific types of documents in those files. And my review of both the public and *in camera* portions of Mr. Hardy's declaration satisfy me that Exemption 7(A) applies to each category. Mr. Hardy has explained the law-enforcement sensitivity of each category of records withheld. Hardy Decl. ¶¶ 31-45. Among other things noted in the public filing, disclosure of these records could impede the investigation by revealing its scope, its focus, its targets, and its techniques, which would help targets elude detection, destroy or fabricate evidence, and interfere with sources. *See, e.g.*, *id.* ¶¶ 36, 38-39, 42-44. Although administrative information may seem innocuous, it can reveal information including the use and effectiveness of certain law enforcement techniques; the identities of sources, witnesses, and targets; the scope and anticipated trajectory of the investigation; and the time and place at which the FBI obtained information. *Id.* ¶¶ 42, 44.

As Mr. Hardy notes, "That a modest amount of intelligence information on related topics has been publicly disclosed does not negate the need to protect records of an active investigation." *Id.* ¶ 9. The FBI evaluated whether it could produce any records given the reports, indictments, and plea agreements on which EPIC relies, but found that this public information does not match the information withheld at the same level of specificity. Second Hardy Decl. ¶¶ 9, 11. An agency's declaration in support of withholding a given set of records enjoys a presumption of good faith even when the agency has made limited disclosures of related information. *See SafeCard Servs.*, 926 F.2d at 1201. EPIC has not overcome this presumption. Exemption 7(A) applies.

**C. The FBI Properly Redacted Records Under FOIA Exemption 1**

Exemption 1 states that FOIA disclosure obligations do not apply to matters that are (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy;" and (2) "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The FBI asserts proper classification under Executive Order 13526. Memo. ISO Mot. Summary J. 24-29. This order authorizes original classification authorities to classify information that "could reasonably be expected to cause identifiable or describable damage to the national security," if it "is owned by, produced by or for, or is under the control of the United States Government" and "pertains to" one or more items on an enumerated list. 75 Fed. Reg. 707, 707, 709 (Dec. 29, 2009). One of the items on the list is "intelligence activities (including covert action), intelligence sources or methods, or cryptology." *Id.* at 709.

EPIC challenges the FBI's heavy redactions to four pages of its Foreign Intelligence Surveillance Act and Standard Minimization Procedures Guide. Memo. ISO Mot. Summary J. 28-33; *see also* Hardy Decl. 22 (listing redacted pages). It concedes the classification of this

9

material under Executive Order 13526, but not the propriety of the classification. EPIC characterizes the FBI's declaration as conclusory and argues that it does not "show, with reasonable specificity" why Exemption 1 applies. Memo. ISO Mot. Summary J. 30-31. According to EPIC, the FBI's explanation would shield "any FISA-related information" from disclosure, even though the FBI and other agencies have publicly released other FISA procedures. *Id.* 31-33; Reply ISO Cross-Mot. Summary J. 14-15.

But Mr. Hardy has explained that the redacted information "does not match or mirror any information previously made public by the FBI through an official disclosure." Second Hardy Decl. ¶ 13. And the FBI does not rely on conclusory allegations that apply to all FISA procedures. To be sure, the Hardy Declaration observes that FISA falls within the protected category of "intelligence activities (including covert action), intelligence sources or methods, or cryptology." 75 Fed. Reg. 707, 709. But, after making that general observation, the Hardy Declaration goes on to explain that the FBI's redactions prevent the disclosure of "how the FBI conducts surveillance under the FISA, handles FISA-derived information, and otherwise implements and utilizes the technique." Hardy Decl. ¶ 70. This explanation provides a more specific explanation of why releasing the redacted information would undermine an important intelligence method and jeopardize national security. *See id.* Providing more information would jeopardize the purpose of Exemption 1. *Id.* And it is unnecessary, particularly given the deference that I must give to agency declarations about national security. *King*, 830 F.2d at 217. I am satisfied that Exemption 1 applies.

### D. The FBI Properly Redacted Records Under FOIA Exemption 3

Exemption 3 exempts from disclosure matters that are "specifically exempted from disclosure by [another] statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria

for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).[4] The FBI invokes Exemption 3 and the National Security Act to justify the same redactions that it made under Exemption 1. Memo. ISO Mot. Summary J. 29.

As with Exemption 1, EPIC challenges the redaction of four pages of the FBI's Foreign Intelligence Surveillance Act and Standard Minimization Procedures Guide. Memo. ISO Cross-Mot. Summary J. 33-35. EPIC finds it "highly implausible" that all the redacted material on the four pages at issue falls within the scope of the National Security Act. *Id.* at 34. According to EPIC, the FBI's argument that the redactions protect intelligence sources and methods from unauthorized disclosure is "conclusory, non-specific, and fails to account for the numerous disclosures of FISA activities and procedures." *Id.* But the FBI has specified the reasons for its redactions in as much detail as possible on the public record and has accounted for the disclosure of other FISA procedures by explaining that the redacted information "does not match or mirror any information previously made public by the FBI through an official disclosure." Hardy Decl. ¶ 70; Second Hardy Decl. ¶ 13. EPIC's speculation that some redacted material must fall outside the scope of the National Security Act does not overcome the presumption of the FBI's good faith. Thus, I find that the material would be properly exempted from disclosure under Exemption 3 even if it was not already covered by Exemption 1.

---

[4] Agencies other than the National Security Agency may invoke this provision as grounds for withholding information under Exemption 3. *See Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (accepting CIA invocation of the National Security Act).

### E. EPIC Has Not Raised an Adequate Challenge to the FBI's Segregability Determination

FOIA requires an agency to release "[a]ny reasonably segregable portion of a record" subject to a FOIA exemption. 5 U.S.C. § 552(b). A record is not reasonably segregable if "exempt and nonexempt information are inextricably intertwined, such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). Agencies enjoy "a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. United States Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The FBI reviewed all responsive records for reasonably segregable information. Hardy Decl. ¶¶ 46, 82. The FBI determined that none of the records responsive to Items 1-3 of EPIC's FOIA request contained segregable information outside the scope of Exemption 7(A). *Id.* ¶ 46. The FBI only redacted the records responsive to Item 4 after a line-by-line determination of what information it could segregate and release. *Id.* ¶ 82. These facts provide an adequate basis for awarding the FBI summary judgment on segregability. *See, e.g.*, *Johnson v. Executive Office for United States Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (affirming award of summary judgment based on agency declaration stating that it conducted a line-by-line segregability analysis); *Cucci v. DEA*, 871 F. Supp. 508, 512 (D.D.C. 1994) (awarding summary judgment based on declaration that records related to ongoing investigation and that "there are no reasonably segregable portions of any documents related to the plaintiff that could be released without jeopardizing the ongoing investigations"). EPIC's argument that segregable material must exist mirrors its challenges to the propriety of the FBI's withholdings and redactions. I

have rejected those challenges already, and I find that they do not overcome the presumption that the FBI complied with its obligation to disclose reasonably segregable material.

* * *

As EPIC stresses, Russian interference in the 2016 presidential election is an important matter which has undoubtedly captured the attention of the American people and their elected representatives. *See* Compl. ¶¶ 11-21. Congress has made the issue a priority. *Id.* ¶ 12. The Senate Intelligence Committee is conducting a bipartisan investigation, armed with the power to compel testimony and documents, and reporting the information that it believes the public needs. *Id.* ¶ 17. The United States intelligence community is also actively investigating and has issued public reports, as EPIC notes. *Id.* ¶ 11. Special Counsel Mueller is leading a team of investigators and attorneys to explore Russian interference and to hold wrongdoers accountable. Memo. ISO Cross-Mot. Summary J. 5. In this context, EPIC's purported goals of enabling "the public to evaluate the FBI response to the Russian interference, assess threats to American democratic institutions, and to ensure the accountability of the [FBI]," *id.* ¶ 21, are best served by allowing federal investigators and lawmakers to conduct their missions on their timetables without the forced piecemeal dissemination of internal government documents relating to these ongoing efforts. In any event, Congress specifically exempted classified and sensitive law enforcement information from FOIA's default presumption for transparency, and it is not up to me to recalibrate that balance.

## IV. CONCLUSION

For the reasons explained above, I conclude that the FBI is entitled to summary judgment on the adequacy of its search and on its withholdings and redactions under Exemptions 1, 3, and 7(A). I also conclude that EPIC has not adequately challenged the FBI's segregability

determination. Thus, the FBI's Motion for Summary Judgment will be granted and EPIC's Cross-Motion for Summary Judgment will be denied. A separate order will issue.

Dated: May 22, 2018

TREVOR N. MCFADDEN
United States District Judge